UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

HERSHEL WALKER,                    )
                                   )
           Plaintiff,              )
                                   )
    v.                             )          No. 4:14CV2094HEA
                                   )
NORTHVIEW VILLAGE                  )
NURSING CENTER,                    )
                                   )
           Defendant.              )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary

Judgment [Doc. No. 65]. Plaintiff opposes the Motion. For the reasons set forth

below, the Motion is granted.

This is an employment discrimination case alleging claims under Title VII of

the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*

Specifically, plaintiff claims that defendant terminated his employment because of

religious discrimination, religious harassment and in retaliation for claiming he

was discriminated against.

### Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant

a motion for summary judgment if all of the information before the court

demonstrates that "there is no genuine issue as to any material fact and the moving

party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.,* 838 F.2d 268, 273 (8th Cir.1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir.2000) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir.2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir.1993).

"While employment discrimination cases are often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment." *Fercello v. County of Ramsey,* 612 F.3d 1069, 1077 (8th Cir.2010) (citing *Berg v. Norand Corp.,* 169 F.3d 1140, 1144 (8th Cir.1999)). There is no separate summary judgment standard for employment discrimination cases, and "it remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial." *Id.*

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir.2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir.2000). However, the court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F.2d 207, 210 (8th Cir.1976).

## Facts

The following facts are taken from Defendant's statement of uncontroverted facts, Plaintiff's statement of material facts, and exhibits in the record.

Plaintiff worked for Defendant as a temporary employee in the maintenance department from approximately January 2010 through July 2010. Defendant laid Plaintiff off in July 2010 because of the low resident census. Plaintiff did not complain of discrimination or harassment related to his 2010 employment.

In September 2012, Defendant hired Plaintiff as a temporary painter. Plaintiff's direct supervisor was Director of Maintenance, Allen Koonce ("Koonce"). Koonce supervised all employees in the maintenance department, including painters and maintenance workers.

In March 2013, Defendant changed Plaintiff's employment status to "full-time," and he became eligible for employee benefits. At that time, Defendant increased Plaintiff's pay from $10.00 per hour to$11.67 per hour.

In the fall of 2013, Defendant's corporate office informed Defendant's Administrator, Judy Deering ("Deering"), that it had to make lay-offs due to payroll budget cuts. One of the departments in which Defendant had to make a lay off was the maintenance department. Deering also learned that Defendant had to make lay-offs in another department as well due to payroll budget cuts. To that end, Deering decided to lay off Emilie Bradford-Taylor, RN, In-Service Nurse, on October 4, 2013. Deering decided to lay off Bradford-Taylor because she had the least seniority, and an employee with more seniority than her could absorb her job duties. Deering decided to lay off Plaintiff because he was the last full-time

employee hired in the maintenance department prior to the lay-off directive and therefore had the least seniority.

Deering informed Koonce about Plaintiff's lay-off, and Koonce informed Plaintiff of his lay-off on October 3, 2013. His lay-off was effective October 4, 2013.

During his employment, Plaintiff never told Koonce, Deering, Northview's Human Resources Manager, Ralph Menees ("Menees"), or anyone at Northview's corporate office about what his religion was. Moreover, during his employment, Koonce, Deering, Menees and Northview's corporate office never asked Plaintiff about his religion.

In summer 2013, Defendant held a company picnic. Attendance was not mandatory. When Koonce asked Plaintiff if he was going to attend the picnic, Plaintiff told him "because of his religion [he] wouldn't be able to attend because of certain foods and stuff [he doesn't] deal with and [he doesn't] like to be around." Koonce "didn't inquire into it any further." Plaintiff did not attend the picnic, and he did not receive any discipline for not attending the picnic.

With regard to his lay off, Plaintiff asked Koonce "why me," and Koonce told him that "they were laying off people throughout the building, … and it was budget cuts, that Mark Suissa told him he had to lay off someone in Maintenance – a painter in Maintenance is what he said."

During his deposition, Plaintiff admitted that Koonce did not reference his religion or tell him that his religion was the reason for his lay-off.

During his deposition, Plaintiff testified that the "religion" referenced in his Charge of Discrimination – "Israelite" – is not actually a religion, but rather is an "ethnicity and a culture" and a "tribal name, [] a surname."

During his deposition, Plaintiff testified twice that he does not have a religion "per se." During his deposition, testified that "the way you could describe my religion would be considered Yahwism," but admitted he did not reference "Yahwism" in his Charge of Discrimination.

Defendant maintains an equal opportunity employment policy and a harassment policy prohibiting unlawful harassment and a procedure for reporting perceived harassment. Plaintiff admitted he received a copy of both policies and was aware of their contents.

According to Plaintiff, three of his co-workers made jokes to him on occasion about his beard and his dietary habits. These jokes began about 3-4 months into his 2012 employment. Plaintiff testified that he does not remember specific dates any comments were made to him or specifically what was said to him on any particular occasion. At first, Plaintiff made jokes to his co-workers about their habits, too. He testified that, a couple of months into his 2012 employment, he complained to Koonce about his workload being unfair, but he did

not tell Koonce that he believed it was unfair because of his religion. He also testified that he complained to Koonce about two co-workers sleeping on the job and having more work assignments than those two co-workers. With respect to his complaints, Plaintiff testified:

> Q: Okay. At any time when you complained, did you ever specifically tell Mr. Koonce that you felt you were being given more work assignments because of your religion?

> A: Well, I think I alluded to it. I didn't specifically, I don't think, say it. I might have said it in a way like, 'Hey, is this because, you know, of my religion?' That's how I most likely phrased it to him, in those kind [sic] of terms.

Plaintiff testified that once or twice he went to the Human Resources office and told Menees he would like to speak with him, but there were other people in the office at the time. Plaintiff testified that he did not tell Menees he wanted to talk to him about discrimination or unfair treatment.

Plaintiff never told Koonce that he experienced religious discrimination or unfair treatment because of his religion. Plaintiff never reported unfair treatment or discrimination to Defendant's corporate office.

Prior to his lay off in October 2013, Plaintiff never reported religious discrimination or harassment to the Equal Employment Opportunity Commission ("EEOC") or to the Missouri Commission on Human Rights ("MCHR").

Plaintiff never received any formal discipline during his employment. He also testified that he believed, like him, Vance Flemings also received more

pressure and assignments from Koonce.

In March 2013, Plaintiff turned down a job with the City of St. Louis offering $13.28 per hour because he "liked the environment" and "enjoyed the work" he did at Northview.

Plaintiff responded to Defendant's Statement of Undisputed Material Facts, however, he failed to produce specific references in the record. Further, Plaintiff has submitted his own Statement of Undisputed Material Facts, to which Defendant has objected based on Plaintiff's failure to cite evidence in the record.

Local Rule 7-4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 7-4.01(E). Plaintiff has not met the requirements of Local Rule 4.01(E), and is deemed to have admitted all facts in Defendant's Statement of Uncontroverted Facts. *Turner v. Shinseki,* 2010 WL 2555114, at *2 (E.D.Mo. June 22, 2010) (citing *Deichmann v. Boeing Co.,* 36 F.Supp.2d 1166, 1168 (E.D.Mo.1999), aff'd, 232 F.3d 907 (8th Cir.2000), cert. denied, 531 U.S. 877).

However, Plaintiff's failure to respond properly to the motion for summary judgment does not mean summary judgment should be automatically granted in favor of Defendant. Even if the facts as alleged by Defendant are not in dispute, those facts still must establish Defendant is entitled to judgment as a matter of law. *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.,* 332 S.W.3d 184, 191 (Mo.Ct.App.2010) (citations omitted). *See also Burnett v. Acikgoz,* No. 4:13–CV–1990–JAR, 2015 WL 4603475, at *2 (E.D.Mo. July 30, 2015); *Vandergrift v. Emerson,* 2012 WL 15021, at *1 (W.D.Mo. Jan. 4, 2012).

Plaintiff has submitted the affidavits of Vance Flemings and Donald Shell, a current employee and a former employee, respectively, of Defendant. Mr. Flemings avers that he witnessed jokes at Plaintiff's expense because of his religion. Mr. Shell avers that he witnessed Plaintiff "being discriminated against" because of his religion by the workers in maintenance.

## Discussion

**Religious Discrimination**

Plaintiff contends he was discharged in violation of Title VII because of his religion. For a Title VII claim to survive a motion for summary judgment, Plaintiff must present direct evidence of unlawful discrimination or create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). "To prove intentional

discrimination through direct proof, a plaintiff must establish 'a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.' " *Gibson v. American Greetings Corp.,* 670 F.3d 844, 853 (8th Cir.2012) (quoting *Putman v. Unity Health Sys.,* 348 F.3d 732, 735 (8th Cir.2003)). Under the burden-shifting framework, plaintiff must first establish a *prima facie* case of discrimination. *Jackson v. United Parcel Serv., Inc.,* 643 F.3d 1081, 1086 (8th Cir.2011). "A *prima facie* case creates a rebuttable presumption of discrimination." *Pye v. Nu Aire, Inc.,* 641 F.3d 1011, 1019 (8th Cir.2011). The burden then shifts to the defendant to prove a legitimate, nondiscriminatory reason for its action. *Id.* If defendant establishes such a reason, the presumption disappears, and the burden shifts back to the plaintiff to prove that defendant's proffered reason is a pretext for unlawful discrimination. *Id.*

To establish a *prima facie* case for religious discrimination, Plaintiff must show that (1) he is a member of a protected class because of his religious affiliation or beliefs, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) "the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Gibson,* 670 F.3d at 854 (quoting *Lake v. Yellow*

*Transp., Inc.,* 596 F.3d 871, 874 (8th Cir.2010)); *Brasch v. Peters,* 479 F.Supp.2d 1045, 1070 (E.D.Mo.2007).

Plaintiff has not presented any direct evidence of religious discrimination. Therefore, this Court will analyze Plaintiff's claim under the *McDonnell Douglas* burden-shifting framework.

Initially, Plaintiff admitted in his deposition that he did not have a religion, *per se*, rather, Israelite" – is not actually a religion, but rather is an "ethnicity and a culture" and a "tribal name, [] a surname."  Assuming *arguendo* that this constitutes a religious affiliation, Plaintiff has presented no evidence that he suffered an adverse employment action because of his religious affiliation.  The only evidence of any mention of Plaintiff's religious beliefs to anyone involved in Plaintiff's discharge was that Plaintiff told Koonce that he was not attending the picnic because of his religion.  This alone, however, fails to rise to the level required to establish religious discrimination because there is absolutely no evidence of an adverse employment action based on Plaintiff's reasoning for not attending the company picnic.

Additionally, Plaintiff has failed to satisfy the fourth element of his *prima facie* case, to wit: circumstances give rise to an inference of discrimination. Plaintiff has presented no evidence to establish that similarly situated employees outside the protected class were treated differently.  Indeed, Ms. Bradford-Taylor

was discharged as well as Plaintiff for the same reason as Plaintiff; she was the employee with the least seniority in nursing. Plaintiff has not identified any similarly situated employees outside of his protected class who were treated more favorably than Plaintiff. Plaintiff has not provided any evidence that Defendant treated him differently than other employees. Further, there is no evidence of biased comments related to Plaintiff's religion by Deering, who made the final decision to discharge Plaintiff. Plaintiff has not offered any evidence that Deering ever made any discriminatory comments about Plaintiff's faith during his employment with Defendant.

Even if this Court assumed, *arguendo,* that Plaintiff could establish a *prima facie* case for religious discrimination, Defendant has established a legitimate, nondiscriminatory reason for the decision to terminate plaintiff's employment. The undisputed facts evidence that Plaintiff was discharged because budget cuts were necessary.

Plaintiff has not presented any evidence, apart from his own sheer speculation, that Defendant's reason for terminating his employment was a pretext for illegal discrimination, or which creates an inference that religious discrimination was the real reason for the termination. "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." *Bone v. G4S Youth Services, LLC,*

686 F.3d 948, 955 (8th Cir.2012) (internal quotations omitted). The federal courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Bone v. G4S Youth Services, LLC,* 686 F.3d 948, 955 (8th Cir.2012) (quoting *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 781 (8th Cir.1995)).

**Harassment**

In order to establish discriminatory harassment in the workplace, Plaintiff must prove: (1) membership in a protected group; (2) subjection to unwelcome harassment based on his protected status; (3) that "the harassment affected a term, condition, or privilege of [his] employment;" (4) that "[his] employer knew or should have known of the harassment;" and (5) that Defendant "failed to take proper action." *Stewart v. Rise, Inc.*, 791 F.3d 849, 860 (8th Cir. 2015). To determine whether the harassment affected his employment, "[the court] examines[s] all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d 535, 540 (8th Cir. 204) (quoting *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886,

892-93 (8th Cir. 2005) (quoting *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004))).

The record before the Court establishes that Plaintiff never made any complaints to those in authority who could have stopped any comments from Plaintiff's co-workers. Furthermore, Plaintiff has presented no evidence of any comments which adversely affected his job performance. Indeed, Plaintiff enjoyed his work and passed up another job offer paying more money because he liked what he was doing. He participated in some of the teasing in the workplace, and his claims of discriminatory harassment were, based on the record before the Court, mere offensive utterances, rather than severe, physically threatening or humiliating conduct. Plaintiff has failed to establish a *prima facie* case of religious harassment.

"Mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to support a claim of hostile work environment." *Arraleh v. County of Ramsey,* 461 F.3d 967, 979 (8th Cir.2006). (internal quotations and citations omitted). "A recurring theme to be derived from these cases 'is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.' " *Brannum v. Missouri Dept.*

*of Corrections,* 518 F.3d 542, 548 (8th Cir.2008) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

## Retaliation

Plaintiff contends he was discharged in retaliation. As with a discrimination claim, to survive a motion for summary judgment, Plaintiff must present direct evidence of retaliation or create an inference of retaliation under the burden-shifting framework established in *McDonnell Douglas. Pye v. Nu Aire, Inc.,* 641 F.3d 1011, 1020 (8th Cir.2011). "Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct." *Id.* (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). Absent direct evidence of retaliation, the burden-shifting framework is applied in the same manner as with a discrimination claim.

Title VII makes it unlawful for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice [by Title VII] ... or ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [under Title VII]." 42 U.S.C. § 2000e–3(a). "The two clauses of this section typically are

described, respectively, as the opposition clause and the participation clause." *Barker v. Missouri Dept. of Corrections,* 513 F.3d 831, 834 (8th Cir.2008).

To establish a prima facie case of unlawful retaliation, Plaintiff must establish that (1) he engaged in protected activity, (2) his employer took an adverse action against him, and (3) the adverse action was causally linked to the protected activity. *Tyler v. University of Arkansas Bd. of Trustees,* 628 F.3d 980, 985 (8th Cir.2011). "In terms of the causal connection, the plaintiff must show that the protected conduct was a 'determinative—not merely motivating—factor in the employer's adverse employment decision.' " *Id.* (quoting *Van Horn v. Best Buy Stores, L.P.,* 526 F.3d 1144, 1148 (8th Cir.2008)).

"If an employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action; if the employer does so, the burden shifts back to the employee to put forth evidence of pretext, the ultimate question being whether a prohibited reason, rather than the proffered reason, actually motivated the employer's action." *Pye v. Nu Aire, Inc.,* 641 F.3d 1011, 1021 (2011) (quoting *Fercello,* 612 F.3d at 1077–78). "An employee can prove that his employer's articulated justification for an adverse employment action is pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* "Either

route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action." *Id.* (quoting *Torgerson v. City of Rochester,* 643 F.3d 1031, 1043 (8th Cir.2011)).

As with his religious discrimination claim, plaintiff has not presented any direct evidence of discriminatory treatment based on retaliation. As a result, his claim of retaliation is also analyzed under the *McDonnell Douglas* burden-shifting framework. Defendant argues that Plaintiff's retaliation claim fails because he was not engaging in protected activity and the evidence does not establish a causal relationship between his complaints and her discharge.

Defendant contends that Plaintiff's complaints were solely about workload and had nothing to do with his religion.

Plaintiff cannot establish he engaged in protected activity simply by submitting that he made a vague, unsupported Complaint of discrimination after he was told he was being discharged.  Moreover, Plaintiff has presented no evidence to show that any protected activity he could establish was the "but-for" cause of his discharge.  Nothing in the record even remotely suggests that the given reason—budgetary cuts—was a pretext for religious discrimination.

## Conclusion

There are simply no facts in the record before this Court to suggest that Plaintiff's religion or his complaints were the reasons for, or even a contributing

factor in, the decision to terminate Plaintiff's employment. Additionally, the legitimate, non-pretextual reason for the termination of Plaintiff's employment is evident. As a result, Defendants is entitled to judgment as a matter of law on Plaintiff's claims of religious discrimination, religious harassment and retaliation under Title VII.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 65] is granted.

A separate Judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 9th day of February, 2017.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE